UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

-------------------------------------------------------------------------X

YAZMIN GUTIERREZ,

                                **DOCKET NO. 2:24-cv-09173-EP-MAH**

                    *Plaintiff,*

       -against-

                                <span style="color:red">**SECOND**</span> **AMENDED**
                                **COMPLAINT**
                                **JURY TRIAL DEMANDED**

LORENZO FOOD GROUP, INC., JOSEPH G. LORENZO
(*in his individual and official capacity*), JOHN LORENZO
(*in his individual and official capacity*), ELDER HERRERA
(*in his individual and official capacity*), ELIZABETH ~~LISSMAN~~<span style="color:red">LISSMANN</span>
(*in her individual and official capacity*), and MARIA VARGAS
(*in her individual and official capacity*),

                                  *Defendants.*

-------------------------------------------------------------------------X

      Plaintiff, **Yazmin Gutierrez (**herein "Plaintiff") by and through her attorneys, **The Law Offices of Geoffrey T. Mott, P.C.**, as and for her Complaint, against Defendant, **Lorenzo Food Group, Inc.,** Defendant **Joseph G. Lorenzo** (in his individual and official capacity), Defendant **John Lorenzo** (in his individual and official capacity), Defendant **Elder Herrera** (in his individual and official capacity), Defendant **Elizabeth** ~~Lissman~~<span style="color:red">Lissmann</span> (in her individual and official capacity), and Defendant **Maria Vargas** (in her individual and official capacity), (hereinafter collectively "Defendants"), states and alleges as follows:

## NATURE OF THE ACTION

      1.    This is a civil action seeking monetary relief, including past and ongoing economic loss, injunctive relief, declaratory judgment, compensatory damages, disbursements, costs and attorney's fees for violations of Federal laws brought pursuant to the Americans with Disabilities Act ("ADA") 42 USC 12101 et seq. and the Family and Medical Leave Act (FMLA) 29 USC Section 2601 et seq., as well as State law claims, including violation of New Jersey Law Against

Discrimination ("LAD"), and New Jersey's Common Law Doctrine, as Plaintiff was subjected to discrimination based on her disability, which ultimately led to retaliation through wrongful termination by her employers.

2.     Specifically, Plaintiff alleges that the Defendants negligently, wantonly, recklessly, intentionally, and knowingly sought to and did wrongfully discriminate against Plaintiff due to her disability, and in doing so, wreaked substantial distress upon Plaintiff.

3.     Said acts were done knowingly with the consent and condonation of Lorenzo Food Group, Inc., Joseph G. Lorenzo, John Lorenzo, Elder Herrera, Elizabeth ~~Lissman~~Lissmann, and Maria Vargas, with the express purpose of retaliating against Plaintiff, and generally violating her rights under both New Jersey Federal and State statutes, rules and regulations.

## JURISDICTION AND VENUE

4.     Jurisdiction of this Court is invoked pursuant to the provisions of the Americans with Disabilities Act, 28 U.S. Code § 1332 and §1346, and the Family Medical Leave Act 29 USC Section 2601 et seq. This Court is requested to exercise pendent jurisdiction with respect to Plaintiff's state law claims pursuant to 28 U.S. Code § 1367.

5.     Venue is proper in the District of New Jersey pursuant to 28 U.S. Code § 1391, based on the fact that Plaintiff's residence is in Bergen County, New Jersey and Defendant's place of business is in Bergen County, New Jersey.

6.     Prior hereto, on July 22, 2024, Plaintiff was issued a Notice of Clients Right to Sue by the United States Equal Employment Opportunity Commission. Annexed hereto as Exhibit "A" is a copy of the Notice of Clients Right to Sue.

## PARTIES

7.     Plaintiff Yazmin Gutierrez (hereinafter "Plaintiff" or "Ms. Gutierrez"), at all times

relevant in this Complaint resided in in the County of Bergen, State of New Jersey.

8.     During all times relevant in this Complaint, Defendant Lorenzo Food Group, Inc. (hereinafter "Defendant Food Group"), was and is an incorporated business. Defendant Food Group's business is located at 196 Coolidge Avenue, Englewood, New Jersey 07631.

9.     During all times relevant in this Complaint, Defendant Joseph Lorenzo (hereinafter "Defendant Joseph"), was and continues to be the President of Defendant Food Group.

10.     During all times relevant in this Complaint Defendant John Lorenzo (hereinafter "Defendant John"), was and continues to be Vice President of Defendant Food Group.

11.     During all times relevant in this Complaint, Defendant Elder Herrera (hereinafter "Defendant Herrera"), was and continues to be the Supervising Manager at Defendant Food Group.

12.     During all times relevant in this Complaint, Defendant Elizabeth ~~Lissman~~Lissmann (hereinafter "Defendant ~~Lissman~~Lissmann"), was and continues to be the Director of Human Resources at Defendant Food Group.

13.     During all times relevant in this Complaint, Defendant Maria Vargas (hereinafter "Defendant Vargas"), ~~-~~was and continues to be the Manager of Human Resources at Defendant Food Group.

## **FACTUAL ALLEGATIONS**

14.     On or about August 2021, Plaintiff was hired by Defendant Food Group as a Production Line Worker.

15.     Plaintiff's responsibilities included but were not limited to: 1) assessing that all fruits were suitably fresh for consumption; 2) packing fruits in containers to company standard; 3)

handling meats in preparation for the production of sandwiches; and 4) sanitizing various areas to which Plaintiff was assigned.

16.    Plaintiff was an excellent product line worker who consistently performed the essential functions of her job, even under the most demanding conditions.

17.    Plaintiff reported to Defendant Food Group's Supervising Manager, Defendant Herrera.

18.    Plaintiff worked alongside Marcela Palacios, a fellow production line worker at Defendant Food Group.

19.    At all times relevant hereto, Defendant Herrera was involved in a romantic and intimate relationship with his subordinate, Marcela Palacios.

20.    On or about July 2022, Plaintiff and Marcela Palacios were involved in a minor disagreement.

21.    Following the disagreement, Defendant Herrera began to harass Plaintiff. Plaintiff and Plaintiff's work product were suddenly subjected to constant overzealous scrutiny and unwarranted critique by Defendant Herrera.

22.    Due to the now hostile work environment, Plaintiff contacted Defendant LissmanLissmann, Director of Human Resources at Defendant Food Group, and requested a transfer to a different production line.

23.    Thereafter, Plaintiff was transferred to a different production line, where she worked as a food production packer.

24.    However, Defendant Herrera continued to harass Plaintiff by constantly visiting the production line Plaintiff was transferred to.

25.    On or about November 2022, Plaintiff's health began to decline, and she requested administrative leave to seek medical treatment. During her administrative leave, Plaintiff maintained constant communication with Defendant ~~Lissman~~Lissmann, Director of Human Resources, providing updates regarding her health.

26.    On or about January 24, 2023, Plaintiff was diagnosed with Stage 3 breast cancer. Plaintiff immediately informed her Human Resources Supervisors, Defendant ~~Lissman~~Lissmann and Defendant Vargas, about her cancer diagnosis. Plaintiff further informed Defendant ~~Lissman~~Lissmann and Defendant Vargas that she needed additional administrative leave in order to receive medical treatment, including but not limited to a mastectomy, which is a major surgical operation.

27.    On or about January 2023, Defendant ~~Lissman~~Lissmann approved Plaintiff's administrative leave request in order for Plaintiff to receive the urgent medical treatment she required.

28.    On or about January 2023, Plaintiff returned to work and requested that she be placed on the packaging food line instead of the fruit line, as a reasonable accommodation due to Plaintiff's breast cancer diagnosis.

29.    Fruit is required to be stored in very low temperatures in order to lower respiration and slow metabolic and transpiration rates to maintain the value and quality of the fruit. Therefore, employees on the fruit line are subjected to extremely low and sometimes freezing temperatures.

30.    Low body temperature is a major concern for individuals with cancer. The side effects of cancer treatment may include dehydration, anemia and fatigue, which can make cancer patients more susceptible to hypothermia because they may lose heat faster than their bodies can produce heat.

31.    In contrast, the packaging food line has a markedly warmer temperature than the fruit line.

32.    On or about January 26, 2023, Defendant ~~Lissman~~Lissmann, Director of Human Resources, denied Plaintiff's request for a reasonable accommodation, ~~foring~~forcing Plaintiff to continue working on the fruit line.

33.    On or about late January 2023, Plaintiff immediately began to experience the effects of the freezing temperatures on the fruit line and became ill. Therefore, Plaintiff once again requested that she be moved to the sandwich line as a reasonable accommodation, while Plaintiff awaited surgery with respect to her breast cancer diagnosis.

34.    Defendant Herrera, Supervising Manager at Defendant Food Group, refused Plaintiff's request to be moved to the sandwich line due to the fact that Marcela Palacios worked on that line.

35.    Plaintiff reported Defendant Herrera's refusal to grant Plaintiff's request for a reasonable accommodation to Defendant Vargas, Manager of Human Resources at Defendant Food Group.

36.    Defendant Vargas took no action and refused to grant Plaintiff's request for a reasonable accommodation. Defendant Vargas specifically stated to Plaintiff that "these were personal issues", and that Defendant Vargas "didn't want to be involved".

37.    Plaintiff further explained to Defendant Vargas that this was a health issue and not a personal issue. However, Plaintiff's request for a reasonable accommodation was again denied by Defendant Vargas.

38.    The reason for this denial was due to the fact that Marcela Palacios, Defendant Herrera's girlfriend, did not want Plaintiff working on the same line as her.

39.     On or about April 2023, Plaintiff informed Defendant ~~Lissman~~Lissmann about her upcoming medical appointments and surgery for a mastectomy. Plaintiff also informed Defendant ~~Lissman~~Lissmann that she would need to take a medical leave of absence for approximately 6 weeks in order to recover from her mastectomy surgery.

40.     On or about April 2023, the Human Resources Department at Defendant Food Group approved Plaintiff's request for medical leave.

41.     Plaintiff diligently worked at Defendant Food Group until the day before her surgery.

42.     Plaintiff updated Defendant ~~Lissman~~Lissmann on the status of Plaintiff's health throughout her medical leave of absence.

43.     On or about May 2023, Plaintiff provided Defendant ~~Lissman~~Lissmann with a letter from Englewood Health Physician Network that requested a reasonable accommodation.

44.     On or about May 2023, Defendant ~~Lissman~~Lissmann assured Plaintiff that there would be a position available for Plaintiff upon her return to Defendant Food Group.

45.     On or about May 2023, as Plaintiff's return to Defendant Food Group approached, Defendant ~~Lissman~~Lissmann ceased all communication with Plaintiff. Defendant ~~Lissman~~Lissmann ignored Plaintiff's telephone calls and text messages.

46.     On or about May 26, 2023, Plaintiff was scheduled to return to work at Defendant Food Group. However, Defendant ~~Lissman~~Lissmann informed Plaintiff that Defendant Food Group was not permitting Plaintiff to return to work.

47.     Thereafter, Plaintiff requested that Defendant Food Group provide her with a part-time job in the alternative, as Plaintiff feared she would not be able to obtain a position with a new employer due to her disability and pending chemotherapy appointments.

48.    Defendant ~~Lissman~~Lissmann denied Plaintiff's request and further stated that Defendant Herrera, Supervising Manager at Defendant Food Group, did not authorize Plaintiff's return to work.

49.    On or about May 26, 2023, Plaintiff's employment at Defendant Food Group was terminated.

50.    Plaintiff's place of work, Defendant Food Group, retaliated against Plaintiff for complaining about the disability discrimination Plaintiff was enduring.

51.    Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas, as Plaintiff's supervisors, aided and abetted the impermissible harassment and the ultimate adverse employment action against Plaintiff.

52.    Defendant Joseph and Defendant John aided and abetted the discriminatory motives, statements and actions by Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas against Plaintiff as Plaintiff's supervisors.

53.    There are approximately 150 employees at Defendant Food Group. Plaintiff was the only employee at Defendant Food Group to be terminated.

54.    Plaintiff's termination was a result of her disability and Defendant Food Group's unwillingness to reasonably accommodate Plaintiff's needs.

55.    Defendant Joseph, Defendant John, Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Maria, as Plaintiff's supervisors, were aware of Plaintiff's disability, approved Plaintiff's medical leave and led Plaintiff to believe that her job was secure. Plaintiff reasonably relied on her supervisors' representations that Plaintiff would be able to return to her position following her recovery.

56.    Instead, Defendant Food Group abruptly terminated Plaintiff due to her disability.

57.     Defendant Joseph, Defendant John, Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas, as Plaintiff's supervisors, aided and abetted in the harassment, discrimination and wrongful termination of Plaintiff by violating their duties as supervisors to prevent and stop the harassment, discrimination and wrongful termination.

58.     Defendant Joseph, Defendant John, Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas aided and abetted Defendant Food Group who denied Plaintiff's request for a reasonable accommodation and terminated Plaintiff's employment based upon Plaintiff's disability.

59.     On or about February 21, 2025, Defendant Herrera was terminated from his employment with Defendant Food Group.

60.     On or about February 27, 2025, Plaintiff learned that Defendant Herrera's termination was based on serious allegations by several former employees of Defendant Food Group.

61.     Specifically, it was alleged that Defendant Herrera unlawfully retained portions of employees' wages for his own personal benefit. As a result, employees were compensated for fewer hours than they actually worked, with Defendant Herrera misappropriating the difference.

62.     Defendant Herrera operated a third-party staffing company, which exclusively provided staffing services for Defendant Food Group.

63.     Defendant Herrera utilized this staffing company to recruit undocumented workers using fictitious names as part of a broader fraudulent scheme intended to assist Defendant Food Group in evading tax laws.

64.     During Plaintiff's employment at Defendant Food Group, Defendant Herrera acted as Plaintiff's direct supervisor.  As such, Plaintiff may have also been undercompensated for hours she actually worked and for which she was entitled to be paid.

65.     Defendant Food Group knowingly participated in unlawful practices by employing undocumented workers using fictitious names through the aforementioned staffing scheme in an attempt to avoid compliance with tax regulations.

66.     Defendant Food Group also engaged in unlawful practices by failing to pay employees their full, earned wages.

67.     Defendant Joseph, Defendant John and Defendant Herrera aided and abetted Defendant Food Group's unlawful conduct by knowingly facilitating and permitting the employment of undocumented workers using false identities as part of the company's tax evasion scheme.

68.     Defendant Joseph, Defendant John and Defendant Herrera further aided and abetted Defendant Food Group in its failure to properly compensate employees for all hours worked.

## AS AND FOR A FIRST CAUSE OF ACTION
### New Jersey Law Against Discrimination, N.J.S.A. 10:15-1 et seq. – DISCRIMINATION BASED ON PERCEIVED DISABILITY

59.69.  Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 5868 of this Complaint with the same force and effect as though fully set forth herein.

60.70.  Pursuant to the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 et seq., Defendants are liable for the acts against Plaintiff by Defendant Food Group's employees, supervisors and management constituting disability discrimination.

61.71. Defendants treated Plaintiff in a discriminatory manner due to their belief and perception that Plaintiff suffered from and would continue to suffer from a disability, specifically, Plaintiff's cancer diagnosis.

62.72. Defendant Food Group is considered an "employer" as defined under the New Jersey Law Against Discrimination.

63.73. Defendant-employees, Defendant Joseph, Defendant John, Defendant Lissman Lissmann, Defendant Herrera and Defendant Vargas, assisted, supported and/or supplemented the conduct in violation of the New Jersey Law Against Discrimination directed against Plaintiff.

64.74. Defendant Herrera was Plaintiff's direct supervisor and directly aided and abetted, and/or participated in the discrimination against Plaintiff based upon her perceived disability and her need for a reasonable accommodation.

65.75. Defendant Lissman Lissmann was Plaintiff's direct Human Resources supervisor and directly aided and abetted, and/or participated in the discrimination against Plaintiff based upon her perceived disability and her need for a reasonable accommodation.

66.76. Defendant Vargas was also Plaintiff's direct Human Resources supervisor and directly aided and abetted, and/or participated in the discrimination against Plaintiff based upon her disability and her need for a reasonable accommodation.

67.77. Defendant Joseph is the President of Defendant Food Group. Defendant John is the Vice President of Defendant Food Group. In their capacity as President and Vice President, respectively, Defendant Joseph and Defendant John were the highest in command, and the supervisors of all other named Defendants.

68.78.  Despite numerous verbal complaints by Plaintiff, Defendant Joseph and Defendant John (a) did nothing to stop the discriminatory and retaliatory conduct of those they supervised; (b) failed to implement Defendant Food Group's workplace policy on harassment and discrimination; (c) failed to investigate Plaintiff's claims; (d) failed to discipline the subordinate employees engaging in the wrongful conduct; and/or (e) acquiesced and condoned the discriminatory conduct by Defendant Food Group's employees.

69.79.  On or about January 26, 2023, due to the very cold, and often freezing conditions of the fruit line, Plaintiff became ill. Therefore, Plaintiff once again requested that her Managing Supervisor, Defendant Herrera transfer Plaintiff to the packaging food line, that had much warmer temperatures, as a reasonable accommodation, while Plaintiff continued treatment for her breast cancer.

70.80.  Defendant Herrera denied Plaintiff's request to be transferred to packaging food line, as a reasonable accommodation.

71.81.  Plaintiff escalated the denial by Defendant Herrera to Defendant Vargas, Human Resources Manager at Defendant Food Group. However, Defendant Vargas took no action and refused to grant Plaintiff's request for a reasonable accommodation. Defendant Vargas specifically stated to Plaintiff that "these were personal issues", and that Defendant Vargas "didn't want to be involved".

72.82.  Upon the expiration of Plaintiff's medical leave of absence, Defendant LissmanLissmann informed Plaintiff that Defendant Food Group was not permitting Plaintiff to return to work.

73.83.  Defendant Joseph's and Defendant John's knowing and willful inaction to prevent the impermissible disability discrimination against Plaintiff resulted in the ultimate adverse

employment action taken against Plaintiff, which resulted in the termination of Plaintiff from her employment at Defendant Food Group.

74.84.  Plaintiff was terminated from her position at Defendant Food Group due to her disability, and for taking approved medical leave as a result of her disability.

75.85.  Defendants knew of the discrimination inflicted on Plaintiff, and, as Plaintiff's supervisors, failed to take any corrective measures to stop or prevent the discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:15-1, et seq.

76.86.  The aforementioned illegal acts were committed against Plaintiff and the conduct complained of would not have occurred but for Plaintiff's perceived disability, specifically, her breast cancer diagnosis.

77.87.  As a result of the illegal and continuing course of conduct by the Defendants described herein, Plaintiff has sustained economic and non-economic damages and emotional distress damages, resulting in loss of compensation, loss of earning power, loss of self-esteem, loss of standing in the community, physical and mental injury, and is incurring legal expenses and other expenses as a result of Defendants' actions.

78.88.  Defendants engaged in conduct that violates the New Jersey Law Against Discrimination, N.J.S.A. 10:15-1, et seq. and have thereby irreparably injured Plaintiff.

## AS AND FOR A SECOND CAUSE OF ACTION
### New Jersey Law Against Discrimination, N.J.S.A. 10:15-1 et seq. – RETALIATION AND REPRISAL

79.89.  Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 7888 of this Complaint with the same force and effect as though fully set forth herein.

80.90.  Defendant Food Group is considered an "employer" as defined under the New Jersey Law Against Discrimination.

81.91. Defendants-employees, Defendant Joseph, Defendant John, Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas assisted, aided, abetted, supported and/or supplemented the conduct in violation of the New Jersey Law Against Discrimination directed against Plaintiff.

82.92. On or about January 26, 2023, due to the very cold, and often freezing, conditions of the fruit line, Plaintiff became ill. Therefore, Plaintiff once again requested that her Managing Supervisor, Defendant Herrera transfer Plaintiff to the packaging food line, that had much warmer temperatures, as a reasonable accommodation, while Plaintiff continued treatment for her breast cancer.

83.93. Defendant Herrera failed to provide Plaintiff with a reasonable accommodation when he denied Plaintiff's request to be transferred to packaging food line.

84.94. Plaintiff escalated the denial by Defendant Herrera to Defendant Vargas, Human Resources Manager at Defendant Food Group. However, Defendant Vargas took no action and refused to grant Plaintiff's request for a reasonable accommodation.

85.95. Defendant Vargas specifically stated to Plaintiff that "these were personal issues", and that Defendant Vargas "didn't want to be involved". Defendant Vargas failed to engage in the interactive process when Plaintiff brought forth her concerns and request for a reasonable accommodation, due to her disability.

86.96. Upon the expiration of Plaintiff's medical leave of absence, Defendant ~~Lissman~~Lissmann informed Plaintiff that Defendant Food Group was not permitting Plaintiff to return to work.

87.97. Defendant Joseph's and Defendant John's knowing and willful inaction to prevent the impermissible disability discrimination against Plaintiff resulted in the ultimate adverse

employment action taken against Plaintiff, which resulted in the termination of Plaintiff from her employment at Defendant Food Group.

88.98.  Plaintiff was terminated from her position at Defendant Food Group in retaliation and reprisal for requesting reasonable accommodations, due to her disability, and for taking approved medical leave, as a result of her disability.

89.99.  Defendants knew of the discrimination inflicted on Plaintiff, and, as Plaintiff's supervisors, failed to take any corrective measures to stop or prevent the discrimination in violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:15-1, et seq.

90.100.    The aforementioned illegal acts were committed against Plaintiff and the conduct complained of would not have occurred but for Plaintiff's perceived disability, specifically, her breast cancer diagnosis.

91.101.    Plaintiff complained of disability discrimination and unlawful treatment by the individual Defendants and is, therefore, a member of a protected class under the New Jersey Law Against Discrimination (NJLAD).

92.102.    By reason of the facts and circumstances asserted above, Plaintiff set forth in writing and notified the individual Defendants of her concerns of disability discrimination, including failure to reasonably accommodate Plaintiff's disability by allowing her to work in warmer temperature conditions, and failure to engage in the interactive process as a result of her disability.

93.103.    As a direct result of Plaintiff communicating her allegations of her supervisors' failure to reasonably accommodate Plaintiff's disability and engage in the interactive process, Plaintiff was terminated, thus constituting an adverse employment action.

### AS AND FOR A THIRD CAUSE OF ACTION
### <u>Violation of Americans With Disabilities Act and the Americans With Disabilities Amendment Act 42 USC 12101 et seq.- FAILURE TO REASONABLY ACCOMODATE</u>

94.104.     Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 93103 of this Complaint with the same force and effect as though fully set forth herein.

95.105.     Plaintiff's breast cancer diagnosis, and the medical care and treatment she was required to participate in resulted in physical and/or mental impairments that substantially limited Plaintiff's life activities, but still allowed her to perform the essential functions of her job with Defendant Food Group.

96.106.     Plaintiff requested, but was denied a reasonable accommodation for her disability. Defendants failed to provide any reasonable accommodation for Plaintiff's disability.

97.107.     Defendant Food Group is considered an "employer" as defined under the Americans Withwith Disabilities Act.

98.108.     Defendants were required to treat all employees equally without discrimination on the basis of disability, and were further required to obey and follow the laws of the State of New Jersey and the United States, including specifically those laws which prohibit disability discrimination in the workplace, retaliatory conduct for providing notice of disability, and those laws that require reasonable accommodations, including the Americans with Disabilities Act.

99.109.     Defendants-employees, Defendant Joseph, Defendant John, Defendant LissmanLissmann, Defendant Herrera and Defendant Vargas assisted,- aided, abetted, supported,

and/or supplemented the conduct in violation of the Americans with Disabilities Act directed against the Plaintiff.

100.110.    On or about January 26, 2023, due to the very cold, and often freezing, conditions of the fruit line, Plaintiff became ill. Therefore, Plaintiff once again requested that her Managing Supervisor, Defendant Herrera transfer Plaintiff to the packaging food line, that had much warmer temperatures, as a reasonable accommodation, while Plaintiff continued treatment for her breast cancer.

101.111.    Defendant Herrera failed to provide Plaintiff with a reasonable accommodation when he denied Plaintiff's request to be transferred to packaging food line.

102.112.    Plaintiff escalated the denial by Defendant Herrera to Defendant Vargas, Human Resources Manager at Defendant Food Group. However, Defendant Vargas took no action and refused to grant Plaintiff's request for a reasonable accommodation.

103.113.    Defendant Vargas specifically stated to Plaintiff that "these were personal issues", and that Defendant Vargas "didn't want to be involved". Defendant Vargas failed to engage in the interactive process when Plaintiff brought forth her concerns and request for a reasonable accommodation, due to her disability.

104.114.    Upon the expiration of Plaintiff's medical leave of absence, Defendant LissmanLissmann failed to accommodate Plaintiff when she informed Plaintiff that Defendant Food Group was not permitting Plaintiff to return to work, despite Plaintiff being able to perform the essential functions of her job.

105.115.    Defendant Joseph's and Defendant John's knowing and willful inaction to prevent the impermissible disability discrimination against Plaintiff resulted in the ultimate

adverse employment action taken against Plaintiff, which resulted in the termination of Plaintiff

from her employment at Defendant Food Group.

106.116.    Defendants' intentional failure and refusal to reasonably accommodate

Plaintiff's known physical and/or mental limitations when she was otherwise qualified to perform

the essential functions of her job was a violation of Plaintiff's rights and Defendants duties under

the Americans with Disabilities Act,  42 USC 12101 et seq.

107.117.    Defendants, their agents and employees by their acts and omissions,

violated Plaintiff's rights under the Americans with Disabilities Act, as Plaintiff is a qualified

individual with a disability under the Americans with Disabilities Act.

108.118.    Plaintiff was excluded from participation, denied benefits and subjected to

discrimination in her employment at Defendant Food Group solely on account of her disability.

109.119.    As a result of Defendants' violations of Plaintiff's rights under the

Americans with Disabilities Act, Plaintiff sustained and continues to sustain loss of wages, loss of

employment, humiliation, shame, isolation, emotional distress, economic losses, and aggravation

of her disability entitling her to compensatory damages in an amount to be determined at trial.


## AS AND FOR A FOURTH CAUSE OF ACTION
### Violation of Americans With Disabilities Act and the Americans With Disabilities Amendment Act 42 USC 12101 et seq.- FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS

110.120.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1

through 109120 this Complaint with the same force and effect as though fully set forth

herein.

111.121.     Plaintiff's breast cancer diagnosis, and the medical care and treatment she was required to participate in resulted in physical and/or mental impairments that substantially limited Plaintiff's life activities, but still allowed her to perform the essential functions of her job with Defendant Food Group.

112.122.     Plaintiff requested more than once, but was denied a reasonable accommodation more than once, for her disability. Defendants utterly failed to engage in the interactive process.

113.123.     Defendant Food Group is considered an "employer" as defined under the Americans With Disabilities Act, 42 USC 12101 et seq.

114.124.     Defendants were required to treat all employees equally without discrimination on the basis of disability, and were further required to obey and follow the laws of the State of New Jersey and the United States, including specifically those laws which prohibit disability discrimination in the workplace, retaliatory conduct for providing notice of disability, and those laws that require reasonable accommodations, including the Americans with Disabilities Act, 42 USC 12101 et seq.

115.125.     Defendants-employees, Defendant Joseph, Defendant John, Defendant Lissman Lissmann, Defendant Herrera and Defendant Vargas assisted, aided, abetted, supported, and/or supplemented the conduct in violation of the Americans with Disabilities Act directed against Plaintiff.

116.126.     On or about January 26, 2023, due to the very cold, and often freezing, conditions of the fruit line, Plaintiff became ill. Therefore, Plaintiff once again requested that her Managing Supervisor, Defendant Herrera transfer Plaintiff to the packaging food line, that had

much warmer temperatures, as a reasonable accommodation, while Plaintiff continued treatment for her breast cancer.

117.127.     Defendant Herrera failed to engage in the interactive process when he denied Plaintiff's request to be transferred to packaging food line, as a reasonable accomadationaccommodation.

118.128.     Plaintiff escalated the denial by Defendant Herrera to Defendant Vargas, Human Resources Manager at Defendant Food Group. However, Defendant Vargas took no action and refused to grant Plaintiff's request for a reasonable accommodation.

119.129.     Defendant Vargas specifically stated to Plaintiff that "these were personal issues", and that Defendant Vargas "didn't want to be involved". Defendant Vargas failed to engage in the interactive process when Plaintiff brought forth her concerns and request for a reasonable accommodation, due to her disability.

120.130.     Upon the expiration of Plaintiff's medical leave of absence, Defendant LissmanLissmann failed to accommodate Plaintiff when she informed Plaintiff that Defendant Food Group was not permitting Plaintiff to return to work, despite Plaintiff being able to perform the essential functions of her job.

121.131.     Defendant Joseph's and Defendant John's knowing and willful inaction to prevent the impermissible, ongoing disability discrimination against Plaintiff resulted in the ultimate adverse employment action taken against Plaintiff, which resulted in the termination of Plaintiff from her employment at Defendant Food Group.

122.132.     Defendants' intentional failure and refusal to engage in the interactive process when Plaintiff was otherwise qualified to perform the essential functions of her job was a

violation of Plaintiff's rights and Defendants duties under the Americans with Disabilities Act, 42 USC 12101 et seq.

123.133.    Defendants, their agents and employees by their acts and omissions, violated Plaintiff's rights under the Americans with Disabilities Act, as Plaintiff is a qualified individual with a disability under the Americans with Disabilities Act.

124.134.    Plaintiff was excluded from participation, denied benefits and subjected to discrimination in her employment at Defendant Food Group solely on account of her disability.

125.135.    As a result of Defendants' violations of Plaintiff's rights under the Americans with Disabilities Act, Plaintiff sustained and continues to sustain loss of wages, loss of employment, humiliation, shame, isolation, emotional distress, economic losses, and aggravation of her disability entitling her to compensatory damages in an amount to be determined at trial.

**AS AND FOR AN FIFTH CAUSE OF ACTION**
**<u>Violation of Family and Medical Leave Act</u>**

126.136.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 125135 of this Complaint with the same force and effect as though fully set forth herein.

127.137.    Defendant Food Group, Defendant LissmanLissmann and Defendant Herrera are considered an "employer" as defined under the New Jersey Law Against Discrimination.

128.138.    Defendant Food Group, Defendant LissmanLissmann and Defendant Herrera, as employers, were required to treat all employees equally without discrimination and were further required to obey and follow the State and Federal laws of the State of New Jersey, including the Family and Medical Leave Act, which permits those who are suffering from illness

and/or disability or caring for an immediate family member suffering from illness and/or disability to take approved, unpaid leave for a specified period of up to twelve weeks.

129.139.    Defendant Food Group, Defendant LissmanLissmann and Defendant Herrera assisted, supported and/or supplemented the conduct in violation of the Family and Medical Leave Act directed against Plaintiff.

130.140.    Defendant Food Group, Defendant LissmanLissmann and Defendant Herrera encouraged, counseled, incited and/or instigated the conduct in violation of the Family and Medical Leave Act.

131.141.    As set forth herein, Defendant Food Group, Defendant LissmanLissmann and Defendant Herrera created and perpetuated a severe and pervasive hostile work environment by harassing and discriminating against Plaintiff as a result of her disability.

132.142.    Defendant LissmanLissmann and Defendant Herrera aided and abetted in discriminating against Plaintiff based upon her disability and her need for a reasonable accommodation.

133.143.    Plaintiff engaged in a protected activity when she exercised her rights under the Family and Medical Leave Act.

134.144.    Upon information and belief, Defendant Food Group, Defendant LissmanLissmann and Defendant Herrera retaliated against Plaintiff for taking approved Family and Medical Leave time to undergo a mastectomy, which is a major surgery, as a result of her breast cancer diagnosis, and recover from this major surgery, by terminating her employment.

135.145.    Defendant Food Group's, Defendant Lissman'sLissmann's and Defendant Herrera's aforesaid acts constitute a violation of the Family and Medical Leave Act.

~~136.~~146.    As a result of Defendant ~~Lissman's~~Lissmann's and Defendant Herrera's violations of Plaintiff's rights under the Family and Medical Leave Act, Plaintiff sustained and continues to sustain the loss of wages and loss of employment.

**AS AND FOR A SIXTH CAUSE OF ACTION**
**<u>Violation of Common Law Doctrine and Wrongful Termination</u>**

~~137.~~147.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through ~~136~~146 of this Complaint with the same force and effect as though fully set forth herein.

~~138.~~148.    Defendants are considered an "employer" as defined under the Americans with Disabilities Act the Family 42 USC 12101 et seq., and the Family and Medical Leave Act, 29 USC Section 2601 et seq.

~~139.~~149.    Defendant Food Group, Defendant Joseph, Defendant John, Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas, as employers, were required to treat all employees equally without discrimination, and were further required to obey and follow the State and Federal laws of the State of New Jersey, including specifically those laws which prohibit disability discrimination in the workplace, retaliatory conduct for providing notice of disability, and those laws that require reasonable accommodations, including the Americans with Disabilities Act 42 USC 12101 et seq., and the Family and Medical Leave Act, 29 USC Section 2601 et seq.

~~140.~~150.    Defendant Food Group, Defendant Joseph, Defendant John, Defendant ~~Lissman~~Lissmann, Defendant Herrera and Defendant Vargas, as employers, were required to treat all employees equally without discrimination and were further required to obey and follow the State and Federal laws of the State of New Jersey, including the Americans with Disabilities Act 42 USC 12101 et seq., and the Family and Medical Leave Act, 29 USC Section 2601 et seq., which permits those who are suffering from illness and/or disability or caring for an immediate family

member suffering from illness and/or disability to take approved, unpaid leave for a specified period of up to twelve weeks.

141.151.    Defendants-employees, Defendant Joseph, Defendant John, Defendant LissmanLissmann, Defendant Herrera and Defendant Vargas assisted, aided, abetted, supported, and/or supplemented the conduct in violation of the Americans with Disabilities Act, 42 USC 12101 et seq., and the Family and Medical Leave Act 29 USC Section 2601 et seq., directed against Plaintiff.

142.152.    Defendants' actions herein violated the Common Law Doctrine of Retaliation and Wrongful Termination as enumerated in *Pierce v. Ortho Pharmaceutical Corp*, 84 NJ 58 (1980), which allows Plaintiffs to sue their current or former employers for a violation of a clear public policy.

143.153.    Defendants' actions herein contravene a clear mandate of public policy as set forth in the Americans with Disabilities Act, 42 USC 12101 et seq., and the Family and Medical Leave Act, 29 USC Section 2601 et seq.

144.154.    Defendants' actions were wanton, intentional, willful and egregious, justifying punitive damages.

### AS AND FOR A SEVENTH CAUSE OF ACTION
### Violation of New Jersey Wage Payment Law

155.    Plaintiff repeats and reiterates the allegations set forth in paragraphs 1 through 154 of this Complaint with the same force and effect as though fully set forth herein.

156.    Pursuant to N.J.S.A. 34:11-4.2, the New Jersey Wage Payment Law ("NJWPL") provides that every employer is obliged "[to] pay the full amount of wages due to his employees at least twice during each calendar month[.]

157.    The NJWPL further provides that "[f]or the purposes of this [A]ct, the officers of

a corporation and any agents having the management of such corporation shall be deemed to be the employers of the employees of the corporation." N.J.S.A. 34:11-4.1(a).

158.    On or about February 21, 2025, Defendant Herrera was terminated from his employment with Defendant Food Group.

159.    On or about February 27, 2025, Plaintiff learned that Defendant Herrera's termination was based on serious allegations by several former employees of Defendant Food Group.

160.    Specifically, it was alleged that Defendant Herrera unlawfully retained portions of employees' wages for his own personal benefit. As a result, employees were compensated for fewer hours than they actually worked, with Defendant Herrera misappropriating the difference.

161.    Defendant Herrera operated a third-party staffing company, which exclusively provided staffing services for Defendant Food Group.

162.    Defendant Herrera utilized this staffing company to recruit undocumented workers using fictitious names as part of a broader fraudulent scheme intended to assist Defendant Food Group in evading tax laws.

163.    During Plaintiff's employment at Defendant Food Group, Defendant Herrera acted as Plaintiff's direct supervisor. As such, Plaintiff may have also been undercompensated for hours she actually worked and for which she was entitled to be paid.

164.    Defendant Food Group knowingly participated in unlawful practices by employing undocumented workers using fictitious names through the aforementioned staffing scheme in an attempt to avoid compliance with tax regulations.

165.    Defendant Food Group also engaged in unlawful practices by failing to pay employees their full, earned wages.

166.    Defendant Joseph, Defendant John and Defendant Herrera aided and abetted Defendant Food Group's unlawful conduct by knowingly facilitating and permitting the employment of undocumented workers using false identities as part of the company's tax evasion scheme.

167.    Defendant Joseph, Defendant John and Defendant Herrera further aided and abetted Defendant Food Group in its failure to properly compensate employees for all hours worked.

168.    By failing to compensate Plaintiff for all straight time worked, Defendants have willfully failed to pay Plaintiff the full amount of wages due and are therefore in violation of the NJWPL.

169.    As a result of Defendants' willful violations of the NJWPL, Plaintiff suffered damages by being denied payment for her straight time in accordance with State law in amounts to be determined at trial

170.    Plaintiff is therefore entitled to recovery of such amounts, together with pre-judgment and post-judgment interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against the Defendants on all of the foregoing Counts for loss of wages, loss of employment, emotional distress and other economic damages. Plaintiff also seeks compensatory damages, consequential damages, punitive damages, attorney's fees, costs and for such other relief as the Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

**STATEMENT PURSUANT TO RULE 4:5-1**

I hereby certify that this matter is not the subject of any other action pending in any court or

arbitration proceeding at the present time.



Respectfully submitted,

THE LAW OFFICES OF GEOFFREY T. MOTT, P.C.

Dated: ~~December 19, 2024~~May 23, 2025          By:    */s/ GEOFFREY T. MOTT*_____
                                                  GEOFFREY T. MOTT, ESQ.
                                                  RAVIT HIERS, ESQ.
                                                  736 Valley Road, First Floor
                                                  Upper Montclair, New Jersey 07043
                                                  Tel:    (973) 655-8989
                                                  Fax:    (973) 655-0077
                                                  gmott@geoffreymottlaw.com
                                                  rhiers@geoffreymottlaw.com
                                                  *Attorneys for Plaintiff*