<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| YAZMIN GUTIERREZ,<br><br>    Plaintiff,<br><br>    v.<br><br>LORENZO FOOD GROUP, INC. *et al.*,<br><br>    Defendants. | No. 24cv9173 (EP) (MAH)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Yazmin Gutierrez brings federal and state law claims against Defendants John Lorenzo, Joseph G. Lorenzo, Elder Herrera, Elizabeth Lissman, and Maria Vargas (collectively, the "Individual Defendants"), as well as their employer Defendant Lorenzo Food Group, Inc. ("Lorenzo Food Group") (collectively, "Defendants"). D.E. 21 ("Amended Complaint" or "Am. Compl."). Plaintiff's claims arise from her employment as a Production Line Worker at Lorenzo Food Group. *Id.*

Defendants move to dismiss the Amended Complaint against the Individual Defendants pursuant to Federal Rule of Civil Procedure 12(b)(6). D.E. 25 ("Motion" or "Mot."). The Court decides the matter without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons below, the Court will **GRANT** Defendants' Motion.

## I.    BACKGROUND AND PROCEDURAL HISTORY[1]

In August 2021, Plaintiff Yazmin Gutierrez was hired by Lorenzo Food Group as a Production Line Worker.  Am. Compl. ¶ 14.  Plaintiff reported to Elder Herrera, a Supervising Manager.  *Id.* ¶ 17.  Marcela Palacios was Plaintiff's co-worker.  *Id.* ¶ 18.  Palacios and Herrera were romantically involved.  *Id.* ¶ 19.  After a dispute between Plaintiff and Palacios in July 2022, Herrera began retaliating against Plaintiff.  *Id.* ¶ 20-21.  Plaintiff contacted Elizabeth Lissman (Lorenzo Food Group's Director of Human Resources) regarding this dispute and requested to be moved to a different production line.  *Id.* ¶ 22.  Plaintiff was then transferred to a different line.  *Id.* ¶ 23.  Herrera continued to harass Plaintiff at her new station.  *Id.* ¶ 24.

In November 2022, Plaintiff's health began to decline, and she requested (and was granted) leave to seek medical treatment.  *Id.* ¶ 25.  During this time, Plaintiff remained in communication with Lissman regarding her health.  *Id.*

Plaintiff was diagnosed with Stage 3 breast cancer in late January 2023.  *Id.* ¶ 26.  Plaintiff informed Lissman and Maria Vargas (who also works in human resources) of her diagnosis and requested additional leave (which was approved by Lissman).  *Id.* ¶¶ 13, 26-27.  Although it is not entirely clear exactly when, Plaintiff returned to work sometime in January 2023.  *Id.* ¶ 28.  When she did, Plaintiff requested to be placed on a different production line because it was difficult for Plaintiff to continue working on the fruit food line—where she would need to work in cold temperatures—as "low body temperature is a major concern for individuals with cancer."  *Id.* ¶¶ 28-31.

---

[1] The facts in this section derive from the Amended Complaint's well-pled factual allegations, which the Court presumes to be true for purposes of resolving this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

According to Plaintiff, Lissman denied this request. *Id.* ¶ 32. After Plaintiff began to experience the effects of the freezing temperatures on the fruit production line, Plaintiff again requested to be moved to a different production line (the sandwich line). *Id.* ¶ 33. But Herrera refused to grant Plaintiff's request because Palacios worked on the sandwich line. *Id.* ¶ 34. Plaintiff reported Herrera's denial of her request to Vargas, but Vargas allegedly told Plaintiff that she did not want to be involved in personal issues between Plaintiff, Herrera, and Palacios. *See id.* ¶¶ 34-36.

In April 2023, Plaintiff requested and was approved to take leave under the Family and Medical Leave Act ("FMLA")[2] to have a mastectomy. *Id.* ¶¶ 39-40. Plaintiff kept Lissman updated on the status of her health throughout her medical leave. In May 2023, "Lissman assured Plaintiff that there would be a position available for Plaintiff upon her return to Defendant [Lorenzo] Food Group." *Id.* ¶ 44. But when it came time for Plaintiff to return to work, Lissman ceased all communication with Plaintiff and then informed Plaintiff she could not return. *Id.* ¶¶ 45-46. Lissman allegedly told Plaintiff that Herrera refused to authorize her return to work. *Id.* ¶ 48. Plaintiff claims she was terminated on May 26, 2023. *Id.* ¶ 49.

On September 17, 2024, Plaintiff filed her Complaint and asserted nine causes of action against Defendants. D.E. 1. On November 19, 2024, the Undersigned held a pre-motion conference, at which Plaintiff agreed to file an Amended Complaint. *See* D.E. 17. In the Amended Complaint, Plaintiff brings six causes of action: discrimination and retaliation in violation of the New Jersey Law Against Discrimination[3] ("NJLAD") (Counts I and II); failure to accommodate and engage in the interactive process under the Americans with Disability Act[4] ("ADA") (Counts

---

[2] 29 U.S.C. §§ 2601-54.
[3] N.J.S.A. § 10:5-1-50.
[4] 42 U.S.C. § 12112.

III and IV); a violation of the FMLA (Count V); and common law wrongful termination (Count VI). Am. Compl. All counts allege individual liability against each of the Individual Defendants.

After a second round of pre-motion letters, D.Es. 22 & 23, the Court allowed Defendants to proceed with their Motion. D.E. 25. Plaintiff opposes the Motion. D.E. 30[5] ("Opposition" or "Opp'n"). Defendants replied. D.E. 28 ("Reply").

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a court accepts all well-pled facts as true, construes the complaint in the plaintiff's favor, and determines "whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation modified). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).[6]

---

[5] Plaintiff first filed her Opposition to Defendants' Motion on February 4, 2025. D.E. 26. However, that version did not comply with Local Civil Rule 1(h), which requires that all PDF filings be text searchable and at a minimum 400 dpi. *See* D.E. 27. The Court refers to Plaintiff's re-filed (and compliant) Opposition, D.E. 30.

[6] Plaintiff quotes "*Davis v. City of Philadelphia*, 821 F.3d 484 (3d Cir. 2016)" as stating the following:

> Courts may only consider the complaint itself, documents that are attached to or referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit and matters of which judicial notice may be taken.

Opp'n at 5-6. The Court reviewed *Davis* and could not find the language quoted in Plaintiff's Opposition. However, the Court did find the quoted language in multiple cases in the Eastern District of New York. *See, e.g.*, *LAM Wholesale, LLC v. United Airlines, Inc.*, No. 18-3794, 2019 WL 1439098, at *1 (E.D.N.Y. Mar. 31, 2019) (citing *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir.

To survive a Rule 12(b)(6) challenge, the plaintiff's claims must be facially plausible, meaning that the well-pled facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). A district court, in deciding a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." *Twombly*, 550 U.S. at 563 n.8 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). The allegations must be "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Ashcroft*, 556 U.S. at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*.

## III.    ANALYSIS

### A.    Wrongful Discharge/*Pierce* Claim (Count VI)

Plaintiff brings a *Pierce* claim against all Defendants. Am. Compl. A *Pierce* claim is a cause of action an employee can bring "for wrongful discharge when the discharge is contrary to a clear mandate of public policy." *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980). To establish a *Pierce* claim against an employer, "the employee must identify the clear mandate of public policy and that the discharge itself was in violation of that public policy." *Myers v. Advanced Stores Co.*, No. 19-18183, 2020 WL 2744632, at *6 (D.N.J. May 27, 2020) (citing *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1183 (N.J. 2008)).

---

2007)). As explained in more depth *infra*, Plaintiff's Opposition contains multiple inaccurate quotations and citations.

This Court has repeatedly held that there is no individual liability available for a *Pierce* claim. *See, e.g.*, *Metzler v. Am. Transp. Grp., LLC*, No. 07-2066, 2008 WL 413311, at *5 (D.N.J. Feb. 13, 2008) ("A plaintiff is only able to maintain a *Pierce* cause of action against his or her employer—not against individual employees." (citing *O'Lone v. N.J. Dep't of Corr.*, 712 A.2d 1177, 1180 (N.J. Super. Ct. App. Div. 1998); *see also Lee v. ElectrifAi, LLC*, No. 23-2239, 2024 WL 4182541, at *7 (D.N.J. Sept. 13, 2024); *Barker v. United Airlines, Inc.*, No. 23-3065, 2024 WL 378633, at *4 (D.N.J. Feb. 1, 2024). Defendants contend this line of cases warrants dismissal of Plaintiff's *Pierce* claim against the Individual Defendants. Mot. at 12.

Plaintiff does not address this caselaw in her Opposition. Instead, after summarizing her allegations against the Individual Defendants, she asserts that "[i]t has been established that individuals in supervisory positions who take part in unlawful retaliatory actions are not insulated from liability simply because they acted in their capacity as employers." Opp'n at 20. However, Plaintiff cites to no case that supports this contention, nor could the Court find any. Count VI is therefore **DISMISSED** against the Individual Defendants ***with prejudice***.[7]

### B.    FMLA Claim (Count V)

To establish an FMLA retaliation claim, a plaintiff must show she: (1) invoked her right to FMLA-qualifying leave; (2) suffered an adverse employment decision; and (3) the adverse action was causally related to plaintiff's invocation of rights. *Capps v. Mondelez Glob., LLC*, 847 F.3d 144, 152 n.6 (3d Cir. 2017). Unlike a *Pierce* claim, an FMLA claim allows for individual liability. *Haybarger v. Lawrence Cty. Adult Prob. & Parole*, 667 F.3d 408, 413 (3d Cir. 2012).[8]

---

[7] This dismissal is with prejudice because the Court finds that amendment would be futile. *See Phillips*, 515 F.3d at 236.

[8] In Opposition, Plaintiff states that "'the plain language of the FMLA decides this question' because the FMLA's definition of employer 'plainly includes persons other than the employer itself.'" Opp'n at 13-14 (quoting *Haybarger*, 667 F.3d at 411). After reviewing *Haybarger*, the

"[A]n individual is subject to FMLA liability when he or she exercises 'supervisory authority over the complaining employee and was responsible in whole or part for the alleged violation' while acting in the employer's interest." *Haybarger*, 667 F.3d at 417 (quoting *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir. 1987)). In analyzing an individual supervisor's control over the employee for purposes of an FMLA claim, courts look to the "economic reality" of the employment situation, examining whether the individual supervisor carried out the functions of an employer with respect to the employee. *Id.* Relevant factors when applying the economic reality test include whether the individual: (1) had the power to hire and fire the employee; (2) supervised and controlled the employee's work schedule; (3) determined the rate and method of payment; and (4) maintained employment records. *Id.* at 418 (citing *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999).

Defendants move to dismiss Count V against the Individual Defendants because Plaintiff fails to allege that any of the Individual Defendants were "supervisors" who exercised direct control over her FMLA leave or retaliated against her for utilizing it. Mot. at 11-12. The Court agrees with Defendants.

### 1. John and Joseph Lorenzo (the "Lorenzos")

The Amended Complaint fails to sufficiently plead facts that connect the Lorenzos to any alleged FMLA violation. In Opposition, Plaintiff argues the Individual Defendants' collectively "exercised supervisory authority over Plaintiff and had the power to approve or deny FMLA leave requests, and terminate Plaintiff's employment." Opp'n at 16. Limited, conclusory, and scattershot arguments concerning whether an employee has supervisory liability over another are

---

first quotation does not appear within the opinion and the second quotation is incorrectly attributed to the Third Circuit, when the language actually comes from *Darby v. Bratch*, 287 F.3d 673, 681 (8th Cir. 2002) in a parenthetical citation in *Haybarger*.

insufficient to survive a motion to dismiss.  *White v. Eberle & BCI Servs., LLC*, No. 12-2169, 2013 WL 211249, at *4 (D.N.J. Jan. 17, 2013).  Plaintiff must allege facts that show the "complaining employee [] was responsible in whole or part for the alleged violation while acting in the employer's interest."  *Haybarger*, 667 F.3d at 417.  Because Plaintiff fails to plead any facts suggesting that either John or Joseph Lorenzo was actually involved in her FMLA leave, Plaintiff's claim is **DISMISSED** *without prejudice* as to both.

2.    *Vargas*

Plaintiff alleges that Vargas was a Manager in the Human Resources Department at Lorenzo Food Group.  Am. Compl. ¶ 35.  Plaintiff allegedly reported Herrera's denial of Plaintiff's request to switch production lines to Vargas, and Vargas also denied Plaintiff's request to switch production lines.  Am. Compl. ¶¶ 35-37.  However, when considering supervisory liability for an FMLA claim, "the Court must determine whether Plaintiff has alleged enough facts to find that [Vargas] was responsible in whole or part for the '*alleged violation*.'"  *Shreve v. New Jersey Motor Vehicle Comm'n*, No. 15-7957, 2016 WL 5334661, at *3 (D.N.J. Sept. 22, 2016) (emphasis added) (quoting *Haybarger*, 667 F.3d at 417).  Plaintiff pleads no facts that connect Vargas to the alleged FMLA violation.  The Court, therefore, will **DISMISS** Plaintiff's FMLA claim against Vargas *without prejudice*.

3.    *Lissman*

It appears that Lissman *may* have exercised supervisory authority over Plaintiff under the economic reality test.  For instance, when Plaintiff first requested a transfer to a different line after a dispute with Palacios and Herrera, she went to Lissman.  Am. Compl.  ¶ 22.  According to the Amended Complaint, Plaintiff was then transferred to a different line.  *Id.* ¶ 23.  Similarly, Lissman approved Plaintiff's request for administrative leave in January 2023, *id.* ¶ 27; "assured" Plaintiff that there would be a position available for her upon her return from her second FMLA leave, *id.*

8

¶ 44; and informed Plaintiff that she was not permitted to return to work in May 2023, *id.* ¶ 46. From these allegations, the Court infers that Lissman exercised some control over Plaintiff's work schedule and potentially had the authority to hire or fire Plaintiff. Crucially, however, this line of reasoning is cut off by Plaintiff's allegation that *Herrera*, not Lissman, was the one who refused to authorize Plaintiff to return, *id.* ¶ 48, thus making Lissman appear as a mere conduit for Herrera's decision.

In addition to this contradiction, Plaintiff does not plead facts regarding the other factors in the economic reality test: whether Lissman determined the rate and method of Plaintiff's payment or whether Lissman maintained employment records. *Haybarger*, 667 F.3d at 418. While this is a closer call than for the other Individual Defendants, ultimately, the Court concludes Plaintiff has insufficiently pled that Lissman "was responsible in whole or part *for the alleged violation.*" *Id.* at 417 (emphasis added). Therefore, the Court will **DISMISS** Plaintiff's claim against Lissman ***without prejudice***.

### 4. Herrera

Plaintiff alleges that Herrera was her direct supervisor. Am. Compl. ¶ 17. On one occasion, Herrera refused Plaintiff's request to be moved to the sandwich line, *id.* ¶ 34, which indicates Herrera exercised control over Plaintiff's work schedule. Herrera also allegedly did not authorize Plaintiff's return to work in May 2023. *Id.* ¶ 48. Beyond these allegations, however, Plaintiff does not allege facts that indicate whether Herrera *actually* had the authority to hire or fire Plaintiff, whether Herrera could determine the rate and method of Plaintiff's payment, or whether Herrera maintained employment records.

Again, "the Court must determine whether Plaintiff has alleged enough facts to find that [Herrera] was responsible in whole or part for the alleged violation." *Shreve*, 2016 WL 5334661, at *3. While this is a close call, the Court concludes that the allegations in the Amended Complaint

are too threadbare and limited for the Court to conclude that Herrera is subject to individual liability under the FMLA. At bottom, Plaintiff's only allegation connecting Herrera to a FMLA violation is her allegation that Lissman told Plaintiff that Herrera did not authorize Plaintiff's return to work. Am. Compl. ¶ 48. But because the Court believes Plaintiff *may* be able to plead more facts in a second amended complaint that address whether Herrera was a supervisor subject to FMLA liability,[9] the Court will **DISMISS** Plaintiff's FMLA against Herrera *without prejudice*.

In sum, Plaintiff has failed to plead individual liability over any of the Individual Defendants, and therefore, the Court will **DISMISS** Plaintiff's FMLA claim (Count V) against all Individual Defendants *without prejudice*.[10]

### C.    NJLAD Claims (Counts I and II)

Counts I and II of the Amended Complaint allege violations of the NJLAD. "The NJLAD provides for individual liability for a supervisory employee where a plaintiff proves that the employee 'aided and abetted' the employer's illegal conduct." *Miller v. Goldcrest Props., LLC*, No. 22-4777, 2023 WL 4145628, at *3 (D.N.J. June 23, 2023) (first quoting N.J.S.A. § 10:5-12(e); then citing *Cicchetti v. Morris Cnty. Sheriff's Office*, 194 N.J. 563, 593 (2008)). An individual supervisor can also be held liable under the NJLAD for their own wrongful conduct based on an "aiding and abetting" theory. *See DeSantis v. N.J. Transit*, 103 F. Supp. 3d 583, 591 (D.N.J. 2015)

---

[9] Specifically, the Court would expect Plaintiff to plead more facts that support the currently conclusory allegation that Lissman told Plaintiff that Herrera refused to authorize her return to work. *See* Am. Compl. ¶ 48. Plaintiff would also benefit by citing to relevant caselaw that shows whether employees in similar circumstances were subject to FMLA liability.

[10] Should Plaintiff seek to proceed with a second amended complaint, she should re-allege her FMLA claim only against the Individual Defendants that she, in good faith, can allege enough facts to survive a motion to dismiss. In other words, Plaintiff must specifically allege facts that show how each Defendant was involved in the alleged violation; it is not enough to bring claims against multiple defendants without specifying conduct that connects a defendant to the cause of action. *See Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 859 (E.D. Pa. 2017).

("New Jersey courts have held that an individual can aid and abet, not only the conduct of another person, but that person's own conduct. That implies the availability of personal liability for a violation of the NJLAD.") (citation omitted).

To establish an aiding and abetting claim, a plaintiff must show that the individual defendant:  (1) aided the party performing a wrongful act that causes an injury; (2) was generally aware of his role as part of an illegal or tortious activity at the time he provided the assistance; and (3) knowingly and substantially assisted the principal violation. *Cicchetti*, 194 N.J. at 594 (citing *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004)).   A plaintiff should also identify the principal violator of the alleged violation(s). *See Miller*, 2023 WL 4145628, at *4 (citing *Tarr*, at 83-84).

In addition to affirmative conduct, a supervisor's "inaction can form the basis of aiding and abetting liability if it rises to the level of providing substantial assistance or encouragement." *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999) (quoting *Failla v. City of Passaic,* 146 F.3d 149, 158 n.11 (3d Cir. 1998).  The Third Circuit and the New Jersey Supreme Court have applied five factors from the Restatement (Second) of Torts to determine whether a defendant provides "substantial assistance" to the principal violator:  (1) the nature of the act encouraged, (2) the amount of assistance given by the supervisor, (3) whether the supervisor was present at the time of the asserted conduct, (4) the supervisor's relations to the others, and (5) the state of mind of the supervisor. *Tarr*, 181 N.J. at 84 (citations omitted).

The purpose of the NJLAD is to prevent employment discrimination; it specifically prohibits discrimination in (1) hiring, (2) firing, (3) compensation, and (4) the "terms, conditions or privileges of employment." N.J.S.A. 10:5-12(a).  This Court has therefore previously reasoned that the NJLAD's objectives are "served by permitting suits against employers and against supervisory employees who affirmatively engage in impermissible conduct while acting in the

scope of employment." *Tyson v. CIGNA Corp.*, 918 F. Supp. 836, 842 (D.N.J. 1996), *aff'd*, 149 F.3d 1165 (3d Cir. 1998). Namely, "only employers and supervisory employees acting within the scope of their employment have the power to hire, fire, set compensation, or alter the terms, conditions or privileges of employment." *Id.*

Defendants move to dismiss the NJLAD claims against the Individual Defendants, arguing for a variety of reasons that the Individual Defendants are not subject to individual liability. Mot. at 6-10. The Court agrees with Defendants and will dismiss the NJLAD claims against the Individual Defendants.

### 1.    The Lorenzos

With respect to the Lorenzos, Plaintiff alleges that both were the "highest in command" and supervisors of all other Defendants. Am. Compl. ¶ 67. According to Plaintiff, despite numerous verbal complaints, the Lorenzos: (1) "did nothing" to stop the allegedly discriminatory conduct she complains of; (2) failed to implement Lorenzo Food Group's policies regarding harassment and discrimination; (3) failed to investigate Plaintiff's claims; (4) failed to discipline those engaged in allegedly wrongful conduct; and (5) acquiesced or condoned the same behavior. *Id.* ¶ 68.

As noted above, a supervisor's inaction can form the basis of aiding and abetting liability. *See Hurley*, 174 F.3d at 126. Plaintiff asserts that the Lorenzos' inaction subjects them to individual liability under the NJLAD. *See* Opp'n at 8 (quoting *Wilmoth v. Arpin Am. Moving Sys., LLC*, No. 19-19187, 2021 WL 3674344, at *10 (D.N.J. Aug. 19, 2021)). But Plaintiff's conclusory allegations are insufficient to state a claim against the Lorenzos. Plaintiff fails to show that either individual was generally aware of his role as part of an illegal or tortious activity or that either knowingly and substantially assisted a principal violation. At best, Plaintiff's allegations address only the fourth factor of the substantial assistance test: the supervisors' relations to others. While

12

Plaintiff allegedly verbally complained to the Lorenzos, Plaintiff does not plead facts upon which the Court can rely to substantiate Plaintiff's otherwise threadbare allegations. For that reason, the Court agrees with Defendants that "Plaintiff never once alleges *facts* that demonstrate knowing and substantial assistance on the part of either Joseph or John Lorenzo." Mot. at 10.

Furthermore, *Wilmoth* cannot save Plaintiff's claims, as the facts alleged here are meaningfully less detailed than in *Wilmoth*, where the plaintiff alleged that a supervisor ignored two emails complaining of another employee's conduct and then further participated in retaliatory attacks. 2021 WL 3674344, at *11. Because Plaintiff fails to show how either Lorenzo aided or abetted an NJLAD violation, the Court will **DISMISS** Plaintiff's NJLAD claims against them ***without prejudice***. *See DeSantis*, 103 F. Supp. 3d at 591.

   *2.* *Vargas*

As detailed in *supra* section III.B.2, Plaintiff alleges that Defendant Vargas was a Manager in the Human Resources Department at Lorenzo Food Group who allegedly denied Plaintiff's request for a reasonable accommodation to switch production lines. Am. Compl. ¶¶ 35-37. However, Plaintiff's own allegations belie that contention. More specifically, Plaintiff alleges that "Vargas took no action and refused to grant Plaintiff's request for a reasonable accommodation." *Id.* ¶ 36. Indeed, as Plaintiff puts it, "Vargas specifically stated to Plaintiff that 'these were *personal issues*,' and that [] Vargas "didn't want to be involved." *Id.* (emphasis added). And although Plaintiff alleges that she told Vargas that this was a health issue (and not a personal issue), Plaintiff again claims that her request was denied "due to the fact that [] Palacios, [] Herrera's girlfriend, *did not want Plaintiff working on the same line as her.*" *Id.* ¶¶ 37-38 (emphasis added). Based on the above, the Court understands the Amended Complaint to allege that Vargas's denial of Plaintiff's request was because Vargas did not wish to be involved in the personal issues between Plaintiff, Herrera, and Palacios.

Moreover, Plaintiff fails to plead facts that show whether:  (1) Vargas was aware of her role as part of an illegal or tortious activity at the time any conduct occurred; (2) Vargas was a principal violator, or, assuming she was not, how she aided and abetted a principal violation; or (3) Vargas exercised supervisory control over Plaintiff in a manner consistent to subjecting her to suit under the NJLAD.  *See Tyson*, 918 F. Supp. at 842.  Therefore, the Court will **DENY** Plaintiff's NJLAD claims against Vargas ***without prejudice***.

### 3. *Lissman*

Defendants argue that Plaintiff fails to identify how Lissman held a supervisory role over Plaintiff such that she is subject to liability under the NJLAD.  Mot. at 8.  For example, Defendants point out that the Amended Complaint does not state whether Lissman had the authority to "hire, fire, set compensation, or alter the terms, conditions or privileges of [Plaintiff's] employment," which in their view, warrants dismissal of this claim against Lissman.  *Id.* at 7 (citing *Tyson*, 918 F. Supp. at 840).

As the Court concluded with respect to Plaintiff's FMLA claim in *supra* section III.B.3, although it is a closer call, Plaintiff has failed to sufficiently allege that Lissman is a supervisor subject to individual liability under the NJLAD.  Namely, while Defendant Lissman works in Human Resources and seems to exercise some authority over Plaintiff's schedule and her FMLA leave, Plaintiff does not plead other facts that would allow the Court to conclude that Lissman is a supervisor subject to individual liability under the NJLAD.  Most notably, as Defendants point out, "Plaintiff herself admitted in her Amended Complaint that Lissman told her that it was [] Herrera, and not Lissman herself, that 'did not authorize Plaintiff's return to work.'"  Mot. at 8 (quoting Am. Compl. ¶ 48).

Indeed, the fact that Herrera, not Lissman, was allegedly behind the decision not to allow Plaintiff to return, is key to the Court's determination that Plaintiff fails to sufficiently allege that

Lissman was a principal violator of the NJLAD. Plaintiff also fails to allege whether Lissman engaged in another discriminatory act or aided and abetted a principal. To the extent Plaintiff seeks to allege that Lissman aided and abetted Herrera, she must plead more. Merely adding the terms "aiding and abetting" to several paragraphs of the Amended Complaint is not enough; Plaintiff must plead facts that give meaning to those terms. *See Miller*, 2023 WL 4145628, at *4 (citation omitted). Because Plaintiff fails to sufficiently plead an aiding and abetting claim against Lissman, the Court will **DISMISS** her NJLAD claims against Lissman ***without prejudice***.

4.    *Herrera*

Herrera is the only Defendant who Plaintiff alleges exercised direct supervisory authority over her. Am. Compl. at ¶ 17; *see also supra* section III.B.4 (providing examples). Most notably, it was Herrera who allegedly did not authorize Plaintiff's return to work following her FMLA leave. Am. Compl. ¶ 48.

As noted above, Plaintiff's allegations as to why she was terminated are problematically contradictory. At one point, Plaintiff alleges that she was terminated from her position "in retaliation and reprisal for requesting reasonable accommodations, due to her disability, and for taking approved medical leave, as a result of her disability." *Id.* ¶ 88. Putting aside the conclusory nature of that allegation, it is in tension with her assertion that Herrera rejected her switch to the sandwich production "due to the fact that [] Palacios, [] Herrera's girlfriend, did not want Plaintiff working on the same line as her." *Id.* ¶¶ 37-38. Thus, Plaintiff alleges multiple motivations for the denial of her accommodation, not all of which are actionable under the NJLAD; in turn, the Court cannot conclude whether Herrera performed a "wrongful act" that would subject him to liability under the NJLAD. *Cicchetti*, 194 N.J. at 594 (citation omitted).

Moreover, Plaintiff has failed to plead whether Herrera was aware of his role as part of an illegal or tortious activity at the time he provided the assistance or that he knowingly and

15

substantially assisted a principal violation (even if he was aiding and abetting his own principal violation). *See id.* Plaintiff has similarly not alleged whether Herrera is a principal or secondary violator. *See Miller*, 2023 WL 4145628, at *4. To the extent Plaintiff seeks to allege that Herrera principally violated the NJLAD by not authorizing Plaintiff's return to work in May 2023, she must allege more than she does in the Amended Complaint. *See* Am. Compl. ¶¶ 48, 51; *see also supra* n.9. Because Plaintiff fails to sufficiently allege individual liability as to Herrera, the Court will **DISMISS** Counts I and II against him *without prejudice*. Overall, the Court will **DISMISS** Counts I and II against the Individual Defendants because Plaintiff has failed to state a claim as to any of the Individual Defendants.[11]

### D. ADA Claims (Counts III and IV)

Plaintiff alleges that Defendants violated the ADA. Although Plaintiff does not state the title of the ADA under which she brings her claims, the Court construes her claims as being brought under Title I,[12] which provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). A "covered entity" under the

---

[11] As noted above, should Plaintiff seek to proceed with a second amended complaint, she should re-allege her NJLAD claims only against the Individual Defendants that she, in good faith, can allege enough facts to survive a motion to dismiss.

[12] "The other titles—which pertain to disability discrimination in the services, programs, or activities of a 'public entity,' disability discrimination in public accommodations, and the provision of telecommunications devices for hearing-and speech-impaired [in]dividuals—do not apply to the facts of this case." *Herring v. Ocean Cnty. Bd. of Soc. Servs.*, No. 22-5149, 2023 WL 6213216, at *3 n.2 (D.N.J. Sept. 25, 2023) (citing 42 U.S.C. §§ 12131-12165, 12181-12189; 47 U.S.C. § 225 and applying this same reasoning that Title I of the ADA covers a claim brought against an employer where the employee-plaintiff failed to state the title of the ADA under which they brought their claims).

ADA includes an "employer," which is "a person engaged in an industry affecting commerce who has 15 or more employees . . . and any agent of such person . . . ." 42 U.S.C. § 12111(2) & (5)(A).

Defendants move to dismiss Counts III and IV of Plaintiff's Amended Complaint against the Individual Defendants, arguing that there is no individual liability. Mot. at 10. To support their position, Defendants quote Third Circuit caselaw that notes that "[a]lthough the Third Circuit has not squarely addressed the issue, it has noted in dicta that there appears to be no individual liability for damages under Title I of the ADA." *Id.* at 11 (quoting *Herring*, 2023 WL 6213216 at *3). Defendants also cite multiple cases from this District which reject individual liability under the ADA. *See id.* at 10 (quoting *Herring* and *Kennedy v. New Jersey Ct. Sys.*, No. 22-5797, 2024 WL 4024232 at *4 (D.N.J. Aug. 30, 2024)).

The Court will follow the long line of cases from this District that have concluded there is no individual liability under Title I of the ADA when a Plaintiff seeks damages. As Chief Judge Bumb recently explained:

> The Third Circuit has stated in dicta that there is no individual liability under Title I of the ADA unless the plaintiff seeks prospective relief. *Koslow v. Pennsylvania*, 302 F.3d 161, 178 (3d Cir. 2002) (noting in dicta that "there appears to be no individual liability for damages under Title I of the ADA"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 189 (3d Cir. 2002) (suggesting in dicta that "individuals are not liable under Title[ ] I of the ADA"); *Williams v. Pa. Hum. Rels. Comm'n*, 870 F.3d 294, 299 & n.27 (3d Cir. 2017) (noting that ADA claims are intended to impose liability on employers, not individuals).

*Kehoe v. Hard Rock Hotel & Casino*, No. 24-490, 2025 WL 1693881, at *3 (D.N.J. June 17, 2025). As Plaintiff seeks damages under Title I of the ADA, individual liability is not available for her as a matter of law. The Court will therefore **DISMISS** Counts III and IV against the Individual Defendants ***with prejudice***.[13]

---

[13] This dismissal is with prejudice because the Court finds that amendment would be futile. *See Phillips*, 515 F.3d at 236.

However, this is not the end of the matter.  In Opposition, Plaintiff—represented by Geoffrey T. Mott from the Law Offices of Geoffrey T. Mott, P.C.—does not address any of the caselaw cited by Defendants.  Instead, Plaintiff's Counsel relies on several decades-old cases from this District and others which do not stand for the propositions for which Plaintiff cites them.

For example, Mr. Mott quotes *Blum v. Witco Chemical Corp.*, 829 F.2d 367, 370 (3d Cir. 1987) as stating that "in dictum '[sic] the law is clear that individuals may be held liable . . . as 'agents' of an employer under Title VII.'"  Opp'n at 11 (quoting *id.*).  But as Defendants note, "Plaintiff's purported quotation from *Blum* is not contained in the *Blum* decision.  In fact, [Defendants] could find no New Jersey or Third Circuit opinion with this quoted language."  Reply at 2.  The Court similarly could not find the language Plaintiff quoted from *Blum* in *Blum*;[14] the term "Title VII" does not appear in *Blum*, and the pincite that Plaintiff states the quotation comes from merely contains the introduction, facts, and procedural history sections of the opinion.[15]

The Court is also concerned by the manner in which Plaintiff's Counsel cites to other cases in Opposition regarding the availability of individual liability under the ADA.  Namely, Mr. Mott cites cases that have not been good law for decades, and does so in a misleading fashion.

For instance, Plaintiff's Counsel asserts that "*Sheridan v. E.I. Du Pont de Nemours & Co.*, 74 F.3d 1439, 1447 (3d Cir. [])* (tacitly approv[ed] [the] district court's judgment finding individual

---

[14] The Court did, however, find the following language in a Sixth Circuit case:  "[p]rior holdings of the Sixth Circuit give at least tacit approval of co-employee supervisor liability." *See Jones v. Continental Corp.,* 789 F.2d 1225, 1231 (6th Cir. 1986) (stating in dictum "the law is clear that individuals may be held liable . . . as 'agents' of an employer under Title VII"). *Kramer v. Windsor Park Nursing Home, Inc.*, 943 F. Supp. 844, 850 (S.D. Ohio 1996), *abrogated by, Wathen v. Gen. Elec. Co.*, 115 F.3d 400 (6th Cir. 1997).

[15] Plaintiff's quotation of *Blum*, in addition to the quotations raised in *supra* nn. 6 & 8, amounts to three quotations within the Opposition which the Court cannot find.

18

jointly and severally liable for Title VII violation)." Opp'n at 11. Defendants in Reply correctly

highlight multiple issues with this assertion:

> The decision cited by Plaintiff was vacated after a rehearing *en banc* at 100 F.3d 1061 (3d Cir. 1996). Further, the decision cited by Plaintiff does not stand for the proposition that it approved a "district court's judgment finding individual jointly and severally liable for Title VII violation." [Opp'n] at 11. In fact, the Court in the *Sheridan* case cited by Plaintiff stated the opposite and found "[f]ollowing the great weight of the appellate decisions concerning employee liability under Title VII, the Age Discrimination in Employment Act, [], and the Americans with Disabilities Act, [] we affirm the dismissal of the claims against [the individual defendant]." *Sheridan*, 74 F.3d at 1443. The subsequent *Sheridan* opinion after a rehearing *en banc*, 100 F.3d at 1078, also states "[f]or these reasons, as well as some of the others cited by the other circuits, we are persuaded that Congress did not intend to hold individual employees liable under Title VII." *Id.*

Reply at 2-3. Plaintiff's Counsel also quotes a paragraph from *Tyson v. Cigna Corporation*, which,

ostensibly supports the argument for individual liability under the ADA:

> This Court has previously held that an employee may be individually liable under the Americans with Disabilities Act, the Age Discrimination in Employment Act, and Title VII as an "employer." *Bishop v. Okidata,* 864 F. Supp. 416 (D.N.J. 1994) (Irenas, J.). Our conclusion was based on the statutory definition of an employer as "a person engaged in industry affecting commerce who has fifteen or more employees . . . and any agent of such person." 42 U.S.C. § 12111(5)(A); *id.* at 422. We held that individual liability was premised on the "any agent" language of the above statute.

918 F. Supp. 836, 838 (D.N.J. 1996). But, as Defendants again correctly point out in Reply, the

very next paragraph in *Tyson* makes clear that this quotation does not fairly represent the holding

of *Tyson*:

> However, the Third Circuit has recently ruled that employees may not be held individually liable under Title VII. *Sheridan v. E.I. DuPont de Nemours and Co, and Jacques Amblard,* [] No. 94-7509, 1996 WL 36283 (January 31, 1996) (slip op. at 22) *Rehearing en banc granted, Judgment vacated*, (February 28, 1996) (affirming district court's dismissal of Title VII claims against individual supervisory employee and holding that "an employee cannot be sued"). Plaintiff conceded at oral argument that *Sheridan* dictates the dismissal of the Title VII claims against all individuals. Plaintiff's Title VII claims against the individual defendants will therefore be dismissed.

Reply at 3-4 (quoting *id.*).  Mr. Mott's selected excerpt from *Tyson* is, at very best, misleading given the next paragraph in *Tyson* directly contradicts the proposition for which he cites it. Moreover, the above paragraph from *Tyson* provided him with a second opportunity to recognize that *Sheridan* was no longer good law.

Plaintiff's Counsel cites another case misleadingly as well:  he argues that like *Blum*, *Zorn v. Helene Curtis, Inc.*, 903 F. Supp. 1226, 1241 (N.D. Ill. 1995) provides "tacit approval of co-employee supervisor liability."  Opp'n at 11 (writing in a parenthetical that *Zorn* [held] that "Congress' intent to eradicate discrimination from the workplace is best served by recognizing individual liability under the various anti-discrimination statutes").  In a parenthetical citation, Plaintiff's Counsel notes that *Zorn* cited to *Jendusa v. Cancer Treatment Centers of America*, 868 F. Supp. 1006 (N.D. Ill. 1994)[16] to support *Zorn's* "holding."  However, contrary to this contention, *Zorn* did not hold that there was individual liability under Title VII; as Defendants highlight in Reply, in the following two sentences of *Zorn* after the language Mr. Mott quotes, the district court made clear that it was "mindful of [its] subordinate position as a district court and recognize[d] that [it was], of course, bound by precedent."  903 F. Supp at 1241.  It therefore "respectfully follow[ed] the Seventh Circuit precedent, and, accordingly, [] grant[ed] defendant[]'s motion for summary judgment on Counts I and II as directed against him in his individual capacity."  *Id.*

---

[16] *Jendusa* found individual liability under the ADA, reasoning that "the prospect of individual liability is essential if the antidiscrimination statutes are to have their full deterrent effect."  868 F. Supp. at 1011.

But *Jendusa* has been bad law for thirty years.  After considering the district court's reasoning in *Jendusa*, the Seventh Circuit explicitly "reject[ed] that Chicken Little-esque argument" and found no individual liability was available under the ADA.  *U.S. E.E.O.C. v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 (7th Cir. 1995).

The Court notes that an individual filing a motion certifies to the Court, among other things, "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(2); *see also Napier v. Thirty or More Unidentified Fed. Agents, Emps. or Officers*, 855 F.2d 1080, 1091 (3d Cir. 1988) ("To satisfy the affirmative duty imposed by Rule 11, an attorney must inquire into both the facts and the law before filing papers with the court.").  Similarly, New Jersey Rule of Professional Conduct ("NJRPC") 3.3(a) provides that a lawyer shall not knowingly:

> (1) make a false statement of material fact or law to a tribunal . . . (3) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel . . . (4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures;[17] or (5) fail to disclose to the tribunal a material fact knowing that the omission is reasonably certain to mislead the tribunal, except that it shall not be a breach of this rule if the disclosure is protected by a recognized privilege or is otherwise prohibited by law.

"A court may, *sua sponte*, order an attorney to 'show cause why conduct specifically described in the order has not violated Rule 11(b).'"  *Bunce v. Visual Tech. Innovations, Inc.*, No. 23-1740, 2025 WL 662398, at *3 (E.D. Pa. Feb. 27, 2025) (quoting Fed. R. Civ. P. 11(c)(3)).  The Court will do so here as detailed in its accompanying Order.

---

[17] These issues were raised by Defendants in Reply on February 10, 2025, and to the Court's knowledge, Plaintiff has taken no efforts to respond to or clarify these discrepancies in the five months that have followed since.

The Court also notes that Defendants suggest that Plaintiff's Counsel "should be sanctioned" in the event he used generative artificial intelligence and did not check whether the citations included within his filings were accurate.  To the extent Defendants seek to file a motion for sanctions themselves, they should make that clear to the Court.

21

IV.    **CONCLUSION**[18]

For the reasons above, the Court will **GRANT** Defendant's Motion and **DISMISS** Plaintiff's claims **in part** *with prejudice* and **in part** *without prejudice*.    An appropriate Order accompanies this Opinion.

Dated: August 19, 2025

Evelyn Padin, U.S.D.J.

---

[18] There appears to be a consensus that a wrongful termination claim based on the same policy as an NJLAD claim is preempted by the statute.  *Powell v. Advancing Opportunities*, No. 22-525, 2023 WL 4866349, at *7 (D.N.J. July 31, 2023) (citing *Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 73 (3d Cir. 1996)).  Because the issue is not presently before the Court, the Court will not address it; however, to the extent the parties believe this may present a future issue in this action, they are encouraged to meet-and-confer regarding a path forward.  Similarly, the Court will not consider "whether a plaintiff can simultaneously seek relief under the FMLA and *Pierce* based on the same public policy for the same or similar alleged violations."  *Powell*, 2023 WL 4866349, at *8.